H. Mark Mersel, California Bar No. 130382
mark.mersel@bclplaw.com
Olivia J. Scott, California Bar No. 329725
olivia.scott3@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
1920 Main Street, Suite 1000
Irvine, California 92614-7276
Telephone: (949) 223-7000
Facsimile: (949) 223-7100

Attorneys for Plaintiff RIC (SAN LEANDRO) LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIC (SAN LEANDRO) LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE DOUGLAS MILLER, an individual and Wyoming resident, PATRICK JOHN KOENTGES, an individual and Colorado resident, KENNETH EDWARD GREER, an individual and Colorado resident, GREEN SAGE, LLC, a Colorado limited liability company,<br><br>Defendants. | Case No. 3:23-cv-01501-SK<br><br>**PLAINTIFF'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR ORDER AUTHORIZING SERVICE OF DEFENDANTS BRUCE DOUGLAS MILLER AND KENNETH EDWARD GREER BY PUBLICATION**<br><br>**[Fed R.Civ.P. 4(e)(1)]**<br><br>[*Filed contemporaneously with Declaration of Olivia J. Scott; Declaration of Bill Murdoch; Declaration of Wesley Roitman; and [Proposed] Order*]<br><br>Hon. Sallie Kim, Courtroom C<br><br>Date: August 21, 2023<br>Time: 9:30 a.m.<br>Courtroom: C |

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

**TO THE HONORABLE COURT AND TO ALL PARTIES BY AND THROUGH THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2023, at 9:30 a.m. or soon thereafter as counsel may be heard, in Courtroom C of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff RIC (San Leandro) LLC, ("**Plaintiff**") will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure, Rule 4(e)(1) and Code of Civil Procedure § 415.50 for an order authorizing Plaintiff to serve Defendants Bruce Douglas Miller, an individual and Wyoming resident ("**Mr. Miller**") and Kenneth Edward Greer, an individual and Colorado resident ("**Mr. Greer**") by publication with the Summons and Complaint and for an extension of time for service.

This motion is made on the grounds that Plaintiff has made a diligent and thorough investigation regarding Mr. Miller and Mr. Greer's home addresses, has made multiple attempts to serve at the addresses found to be associated with Mr. Miller and Mr. Greer, and has not been able to locate or serve Mr. Miller and Mr. Greer to date.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Olivia J. Scott, Declaration of Bill Murdoch, Declaration of Wesley Roitman and all other matters that the Court may consider.

Dated: July 18, 2023

H. Mark Mersel
Olivia J. Scott
**BRYAN CAVE LEIGHTON PAISNER LLP**

By: _____
Olivia J. Scott
Attorneys for Plaintiff
RIC (SAN LEANDRO) LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

I.     **INTRODUCTION**

On June 9, 2023, Plaintiff RIC (San Leandro) LLC, ("**Plaintiff**") filed its Motion seeking authority to serve Defendants Bruce Douglas Miller ("**Mr. Miller**") and Kenneth Edward Greer ("**Mr. Greer**" together with Mr. Miller, the "**Defendants**") by publication pursuant to Fed. R. Proc. 4 ("**Original Motion**"), and requesting an extension of time to serve the Defendants with the summons and Complaint in this action. The Original Motion was set for hearing on July 17, 2023. Instead, the Court decided the Original Motion on the papers, granting Plaintiff a 90-day extension to the service deadline, but denying the request for authority to serve Defendants by publication without prejudice, stating that the Plaintiff must file a renewed motion, which includes a sworn declaration attesting to the claims existing against both Defendants.

Now, Plaintiff files this Renewed Motion for an Order Authorizing Service by Publication ("**Renewed Motion**"), and files herewith the Declaration of Wesley Roitman, which attests to Plaintiff's claims against both Defendants, particularly Plaintiff's entitlement to deficiency judgments against Defendants.

As of the date of this Renewed Motion, Plaintiff has made numerous attempts to personally serve the Defendants, and even went so far as to hire a private investigator, and contact prior-known attorneys of the Defendants in an attempt to determine all potential locations at which to the Defendants could be personally served. Following those reasonable and diligent attempts to personally serve Defendants, it became clear that Defendants are simply evading service and attempting to avoid judgment for their failure to pay the amounts due under their Loan Guarantees, as further described in the Complaint, which is incorporated by reference herein. Given the foregoing, and as further described below, Plaintiff respectfully requests that this Court (1) extend the time by which Plaintiff may serve the Summons and Complaint upon the Defendants by 40 days from the entry of the Court's order on this Renewed Motion; and (2) authorize Plaintiff to serve the Summons and Complaint by publication for four consecutive weeks in the following publications, based on the findings of addresses associated with Defendants: (a) the Daily Transcript in San Diego County in California; (b) the Denver Herald Dispatch in Denver County in Colorado and The

Sentinel in Arapahoe County in Colorado; (c) the Jackson Hole News & Guide in Teton County in Wyoming; and (d) the Bozeman Daily Chronicle in Gallatin County in Montana.

## II. BACKGROUND

On or around March 23, 2023, Plaintiff filed the underlying Complaint and asserted claims for breach of certain written guaranty agreements, as described in the Complaint, against Mr. Miller, Mr. Greer, Patrick Koentges and Green Sage, LLC. Prior to filing the underlying Complaint, Plaintiff participated in mediation that involved separate claims with respect to the collateral securing the Loan Documents,[1] which Loan is guaranteed by the Defendants. (Declaration of Olivia J. Scott ("**Scott Decl.**"), ¶ 2). Leading up to and during that mediation process, principals of Plaintiff were in contact with Mr. Miller and Mr. Greer by both phone and email. However, upon the filing of this Complaint, the Defendants have seemingly disappeared overnight, leased out or sold their prior residences and are quite clearly evading Plaintiff's numerous attempts to personally serve Defendants with the Summons and Complaint in this action.

### A. Basis for Plaintiff's Complaint

As is further detailed in the Complaint on file with the Court, on or about August 20, 2019, Original Lender provided financing to Oakland Cannery Real Estate, LLC; 5733 SLOCA Partnership and 5601 SLOCA, LLC (collectively "**Borrower**") in the original principal amount of $54,465,000.00 (the "**Loan**"). (Declaration of Wesley Roitman ("**Roitman Decl.**") ¶ 4). That same day, Defendants executed Guaranty Agreements, true and correct copies of which are attached as exhibits to in the Complaint, in favor of the Original Lender. (*Id.*)

Pursuant to the Guaranty Agreements, Defendants unconditionally and absolutely guaranteed the full and prompt payment of all obligations owed by Borrower to Original Lender under the Loan Documents. (*Id.* at ¶ 5). Moreover, Defendants promised to pay, and are obligated to pay, all costs, expenses and attorneys' fees paid or incurred by Original Lender in endeavoring to collect and enforce the obligations arising under the Loan Documents. (*Id.*).

Borrower failed to repay the Loan upon the Maturity Date. (*Id.* at ¶ 6). On November 22,

---
[1] Capitalized terms not otherwise defined herein retain their definition as assigned in the Complaint.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

2021, Original Lender provided Defendants with notice of the Maturity Default and demanded repayment of the Loan in full. Defendants failed to repay the Loan amount as demanded, and continue to fail to repay the Loan amount as of the date of this Declaration. (*Id.*)

Original Lender assigned to Plaintiff all of Original Lender's right, title and interest in and to the Loan, and Plaintiff is now the holder in due course of the Loan Documents, and all obligations previously owed to Original Lender are now owed to Plaintiff. (*Id.* at ¶ 7)

On September 14, 2022, Plaintiff foreclosed its interests in and to the Property, acquiring title thereto for a successful credit bid of $25 million. (*Id.* at ¶ 8). On or around September 28, 2022, Plaintiff sent Defendants a Demand for Payment of the remaining amounts immediately due and owing under the Loan Documents in an amount of no less than $51,507,018.29. (*Id.* at ¶ 9). Defendants have failed to pay the amounts due and owing and, therefore, Defendants continue to be in default under their respective Guaranty Agreements. (*Id.*). Accordingly, on March 29, 2023, Plaintiff filed its Complaint for breach of written guaranty agreement as against the Defendants. As of the date of this Renewed Motion, Defendants have continued to evade service of the summons and Complaint.

**B.     Plaintiff's Attempts to Serve Mr. Miller**

Beginning on or around April 7, 2023, Plaintiff has attempted to serve Mr. Miller no less than ten times at three different addresses, as is evidenced by the affidavits of due diligence issued by Plaintiff's process server and attached to the Scott Decl. as **Exhibits A-C**. Plaintiff attempted service at an address in Littleton, Colorado (where Plaintiff understands on information and belief that Mr. Miller may reside); Belgrade, Montana (where Plaintiff understands on information and belief that Mr. Miller owns a ranch property); and Jackson, Wyoming (where Plaintiff understands on information and belief that Mr. Miller may reside). (Exs. A-C). Plaintiff attempted service at the address provided by Mr. Miller in his Guaranty Agreement and also at addresses identified through (i) information obtained from other co-defendants and guarantors to the Loan; and (ii) the hiring of a private investigator, as further described below. Although ten (10) total attempts were made to serve Mr. Miller at the three addresses, Plaintiff has been unable to locate and serve Mr. Miller personally at any of those addresses.

Plaintiff's counsel also spoke to an attorney for Mr. Miller's ex-wife who confirmed the address of the Belgrade, Montana property—at which location Plaintiff attempted service seven times—as a property owned by the couple. (Scott Decl. ¶ 4). The attorney for Mr. Miller's ex-wife also identified Mr. Miller's counsel in litigation with his ex-wife as Peter D. Menges of The Law Office of Peter D. Menges, P.C. (*Id.* at ¶ 5). Thereafter, counsel for Plaintiff contacted Mr. Menges by telephone in an attempt to determine the location of Mr. Miller. Mr. Menges responded on May 20 by email and stated that he represents Mr. Miller on a "limited issue" in Jefferson County, Colorado, but does not have authority to disclose his whereabouts. (*Id.*). A true and correct copy of Mr. Menges' email is attached to the Scott Decl. as **Exhibit D**.

### C. Plaintiff's Attempts to Serve Mr. Greer

Beginning on or around April 5, 2023, and as of the date of this Renewed Motion, Plaintiff has attempted to serve Mr. Greer no less than 13 times at a total of three different addresses, as is evidenced by the affidavits of due diligence issued by Plaintiff's process server and attached to the Scott Decl. as **Exhibits E-G.** Plaintiff attempted service at two addresses in Denver, Colorado (where Plaintiff understands on information and belief that Mr. Greer resides), as well as an address in La Jolla, California (where Plaintiff understands on information and belief Mr. Greer may own a second residence). (Scott Decl. ¶ 6, Exs. E-G). Plaintiff attempted service at the address provided by Mr. Greer in his Guaranty Agreement and also at the addresses identified through (i) information obtained from other co-defendants and guarantors to the Loan; and (ii) the hiring of a private investigator, as further described below. On May 8, 2023, Plaintiff's process server attempted to serve Mr. Greer at the property located at 3278 S. Glencoe St., Denver, Colorado 80222; however, the process server was met by a couple who began renting the property only two months earlier, and less than a month before the filing of this Complaint. (Ex. E). The couple provided no further information regarding the landlord or his/her whereabouts. (Ex. E).

Although thirteen (13) total service attempts were made at the three addresses, Plaintiff has been unable to locate and serve Mr. Greer personally at any of those addresses.

### D. Plaintiff's Hiring of a Private Investigator

On or about May 9, 2023, Plaintiff hired a licensed private investigator, Bill Murdoch

("**Mr. Murdoch**"), to identify any addresses associated with either Defendant. (Scott Decl. ¶ 7). Mr. Murdoch's investigation included, among other things, the following searches: (1) searching public databases for information; (2) cross-referencing known family members to determine current residence; (3) running license plates numbers of vehicles parked outside addresses associated with either Defendant; (4) conducting utilities checks; (5) conducting searches for driver's licenses potentially linked to either Defendant. (Murdoch Decl. ¶ 2).

As a result of the foregoing investigations, Mr. Murdoch confirmed that both the Jackson, Wyoming and the Belgrade, Montana addresses are associated with Mr. Miller, and the La Jolla, California address is associated with Mr. Greer. (*Id.* at ¶ 3).

Moreover, on or about May 22, 2023, Mr. Murdoch identified the personal cell phone number for Mr. Greer and made a phone call to that number. (*Id.* at ¶ 4). When Mr. Greer answered that May 22 phone call, Mr. Murdoch asked "Hi, is this Kenny?" to which Mr. Greer said "Yes." (*Id.*). Mr. Murdoch then introduced himself as a licensed private investigator in possession of legal documents that he needed to serve on Mr. Greer. (*Id.*). Mr. Greer then interrupted Mr. Murdoch, said "I'm sorry," and promptly disconnected the call. (*Id.*). Mr. Murdoch followed up the May 22 phone call by sending a text message that same day to the same phone number identified as Mr. Greer's personal cell phone stating: "Just hear me out, please. We can meet at a coffee shop of your choice in La Jolla. I'm trying to be discreet." (*Id.* at ¶ 5). As of the date of this Renewed Motion, Mr. Greer never responded to Mr. Murdoch's text message. (*Id.*)

As of the date of this Renewed Motion, Plaintiff has (1) made at least 23 collective attempts to serve the Defendants at a collective six different addresses, (2) hired a private investigator to determine the whereabouts of the Defendants; (3) made contact with persons with knowledge of the Defendants' whereabouts (including prior counsel, tenants and a prior spouse) and has still been unable to personally serve the Defendants with the Summons and Complaint.

### III. ARGUMENT

A plaintiff may effectuate service of process of the summons and complaint in any judicial district of the United States pursuant to either (1) the law of the state in which the district court is located; or (2) the methods approved by Rule 4 of the Federal Rules of Civil Procedure ("**FRCP**").

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

FRCP 4(e); *see also Indian Hills Holdings, LLC v. Frye*, 337 F.R.D. 293, 297 (S.D.Cal. 2020). There is no provision in the Federal Rules of Civil Procedure which authorizes service of a summons by publication, and as such, "an individual seeking to serve a defendant by publication of the summons must look to the provisions in [FRCP] 4(e)(1) allowing for service of process to be effectuated under state law." *Indian Hills Holdings, LLC*, 337 F.R.D. at 297. Pursuant to California Code of Civil Procedure ("**CCP**") § 415.50, a "summons may be served by publication if upon affidavit it appears to the satisfaction of the court . . . that the party to be served cannot with reasonable diligence be served in another manner . . . and . . . a cause of action exists against the party upon whom service is to be made . . . ."

Here, by this Renewed Motion, Plaintiff seeks authority to serve the Defendants by publication because (1) after reasonable diligence, Plaintiff has been unable to effectuate personal service upon the Defendants; and (2) the Defendants are necessary parties to the action pending before this Court.

**Plaintiff, with Reasonable Diligence, Has Been Unable to Personally Serve the Defendants.** Under California law, "[c]onsistent with the notions of fair play and due process, substituted service by publication is a last resort when reasonable diligence to locate a person in order to give him notice before resorting to the fictional notice afforded by publication has been exercised." *Calvert v. Al Binali*, 29 Cal.App.5th 954, 963 (2018). In this context, the term "reasonable diligence" denotes a "thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney. A number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, and by investigation of appropriate city and telephone directories [voters' registries and the assessor's office property indices situated near the defendant's last known location] generally are sufficient." *Board of Trustees of Leland Stanford Junior University v. Ham*, 216 Cal.App.4th 330, 338 (2013) (internal citations omitted).

Here, Plaintiff has acted reasonably diligently and honestly in its attempts to effectuate personal service upon the Defendants and has exhausted all avenues by which it might learn of the Defendants' whereabouts. As described in the Part II above, Plaintiff: (1) researched and determined (with the help of a private investigator) at least three separate addresses at which to

serve Mr. Miller and Mr. Greer, respectively; (2) hired a private investigator to (a) determine the address of any additional residences of the Defendants by running searches of local databases (i.e., locating driver's license information, running searches of license plate numbers of vehicles parked outside addresses associated with Defendants); and (b) locate any family members who may know the Defendants' whereabouts; (3) made contact with prior counsel of Mr. Miller and counsel of Mr. Miller's ex-wife to inquire as to his whereabouts; and (4) communicated with tenants and building owners at addresses associated with Defendants. Notwithstanding the Plaintiff's thorough, systematic investigation, Defendants continue to evade personal service. Accordingly, substituted service by publication is warranted in this instance.

**Causes of Action Are Validly Pending Against Defendants, such that Defendants are a Necessary and Proper Party.** Plaintiff filed its Complaint before the above-captioned Court on or about March 29, 2023, bringing claims against Defendants for breach of those certain written guaranty agreements for Defendants' failure to pay the amounts due and owing under their Loan Guarantees, as further detailed in the Complaint.

Under well-settled California law, if the real property security is sold at a foreclosure sale prior to the judgment on the guaranty, the amount of a judgment the lender is entitled to obtain as against the guarantor is measured by the difference between the secured debt and the net proceeds received from the foreclosure sale. *See Gramercy Inv. Trust v. Lakemont Homes Nevada, Inc.*, 198 Cal.App.4th 903, 911 (2011) (recognizing deficiency judgment against guarantor was calculated by subtracting the lender's credit bid at the non-judicial foreclosure sale from the borrower's remaining outstanding debt, and holding that guarantor must pay the deficiency judgment because guaranty agreement expressly waived antideficiency and election of remedies rights and defenses). However, if the property securing the underlying loan reverts to the foreclosing lender, the judgment is measured by the difference between the secured debt and the lender's credit bid at the foreclosure sale. *Id.* A guarantor does not have standing to raise the "fair value rule (*i.e.*, by claiming the lender's credit bid was less than fair market value) following nonjudicial foreclosure. *See Dreyfuss v. Union Bank of California*, 24 Cal.4th 400, 409-13 (2000).

Here, as further defined in the Complaint, Defendants guaranteed the Loan made by Original Lender, all the rights to which were then assigned to Plaintiff. Borrower failed to pay the Loan amount in full upon default, and, therefore, the Loan obligation became immediately due and owing by both Borrower and Defendants. As a result, Plaintiff nonjudicially foreclosed on the real property securing the Loan. Plaintiff was the successful credit bid; however, the credit bid was for an amount less than the full Loan amount owed. Accordingly, a deficiency judgment remains due and owing by Defendants.

Defendants waived and agreed not to assert, plead or enforce any and all defenses, claims, setoffs and discharges that they may have as a result of foreclosure on the loan. Specifically, Defendants expressly acknowledged and agreed to remain fully liable under the Guaranty Agreement where the Original Lender judicially or nonjudicially foreclosed on the real property securing the Loan. (*See* Ex. G to the Complaint). As of the date of this Renewed Motion, Defendants have not paid the deficiency amount due and owing to Plaintiff. Accordingly, valid claims are pending against Defendants in the above-captioned action.

**Service by Publication in the Counties of All Addresses Associated with Defendants is Proper Under CCP § 415.50(b) and California Government Code § 6064.** If a party to be served by publication resides or is located outside the state in which the action has been initiated, the Court may order the summons to be published in a named newspaper outside the state that is most likely to give actual notice to that party. CCP § 415.50(b). Here, Plaintiff has identified addresses associated with the Defendants in San Diego County, CA; Denver County, CO; Arapahoe County, CO; Teton County, WY; and Gallatin County, MT. Accordingly, Plaintiff seeks authority to serve notice by publication via newspapers of general circulation in those Counties. Specifically, Plaintiff proposes to serve the Defendants by publication via the following newspapers: (a) the Daily Transcript in San Diego County in California; (b) the Denver Herald Dispatch in Denver County in Colorado and The Sentinel in Arapahoe County in Colorado; (c) the Jackson Hole News & Guide in Teton County in Wyoming; and (d) the Bozeman Daily Chronicle in Gallatin County in Montana.

Pursuant to Cal. Gov. Code § 6064, publication of notice of a summons and complaint must take place once a week for four successive weeks. Four publications in a newspaper of general circulation once a week (or more often), with at least five days intervening between the publication dates (not counting such publication dates) is sufficient for proper service by publication. Cal. Gov. Code § 6064. In other words, service by publication requires no less than 28 days to effectuate service. Accordingly, Plaintiff request that this Court extend its time by which to serve the Defendants with the Summons and Complaint by 40 days from the date of entry of the Court's order on this Renewed Motion, to account for any delays in publishing.

## IV.     CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court authorize Plaintiff to serve the Summons and Complaint by publication for four consecutive weeks in the following publications, based on our findings of addresses associated with Defendants: (a) the Daily Transcript in San Diego County in California; (b) the Denver Herald Dispatch in Denver County in Colorado and The Sentinel in Arapahoe County in Colorado; (c) the Jackson Hole News & Guide in Teton County in Wyoming; and (d) the Bozeman Daily Chronicle in Gallatin County in Montana.

Dated: July 18, 2023

H. Mark Mersel
Olivia J. Scott
**BRYAN CAVE LEIGHTON PAISNER LLP**

By: _____
Olivia J. Scott
Attorneys for Plaintiff
RIC (SAN LEANDRO) LLC